# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK
### ALBANY DIVISION

DYNAMIC ADVANCES, LLC,

            Plaintiff,

    v.

APPLE INC.

           Defendant.

Civil Action No. 1:12-cv-1579
(DNH/DEP)


**JURY TRIAL DEMANDED**


## APPLE INC.'S MOTION TO TRANSFER

2099820.1 1/14/2013

## TABLE OF CONTENTS

**Page**

I.      Introduction ................................................................................................. 1

II.     Background ................................................................................................. 1

        A.      Plaintiff Dynamic Advances ............................................................. 1

        B.      Apple ............................................................................................... 3

        C.      Relevant Third Parties ..................................................................... 3

III.    Legal Standard ........................................................................................... 4

IV.     This Case Should Be Transferred to the Northern District of California ..... 5

        A.      Dynamic Advances' Claims Against Apple Might Have Been
                Brought in the Northern District of California .................................. 5

        B.      Northern District of California is a More Convenient Forum ............ 5

V.      Conclusion ............................................................................................... 16

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Amersham Pharmacia Biotech, Inc. v. Perkin-Elmer Corp.,*
   11 F. Supp. 2d 729 (S.D.N.Y. 1998) ........................................................................ 6

*Brandywine Commc'ns Techs. v. Cisco Sys., Inc.,*
   No. 6:11-cv-1843, 2012 U.S. Dist. LEXIS 68317 (M.D. Fl. Mar. 26, 2012) ............. 11

*Clerisy Corp. v. Airware Holdings, Inc.,*
   No. 12-cv-6396, 2012 U.S. Dist. LEXIS 144063 (W.D.N.Y. Oct. 4, 2012)............... 13

*Costello v. Home Depot U.S.A., Inc.,*
   No. 3:11-cv-00953, 2012 U.S. Dist. LEXIS 124707 (D. Conn. Apr. 10, 2012) ......... 13

*DH Blair & Co. v. Gottdiener,*
   462 F. 3d 95 (2nd Cir. 2006)................................................................................. 5, 6

*Eichenholtz v. Brennan,*
   677 F.Supp. 198 (S.D.N.Y. 1988) ......................................................................... 12

*Fuji Photo Film Co. v. Lexar Media, Inc.,*
   415 F. Supp. 2d 370 (S.D.N.Y. 2006) ................................................................. 6, 11

*In re Genentech, Inc.,*
   566 F.3d 1338 (Fed. Cir. 2009)............................................................................. 6, 7

*In re Hanger Orthopedic Grp., Inc, Sec. Litig.,*
   418 F. Supp. 2d 164 (E.D.N.Y. 2006) ..................................................................... 13

*In re Nintendo Co.,*
   589 F.3d 1194 (Fed. Cir. 2009)................................................................................ 8

*In re TS Tech USA Corp.,*
   551 F.3d 1315 (Fed. Cir. 2008)............................................................................. 4, 8

*In re Volkswagen of Am., Inc.,*
   545 F.3d 304 (5th Cir. 2008).................................................................................... 6

*Invivo Research, Inc. v. Magnetic Resonance Equip. Corp.,*
   119 F. Supp. 2d 433 (S.D.N.Y. 2000) ..................................................................... 12

*Neil Bros. v. World Wide Lines, Inc.,*
   425 F. Supp. 2d 325 (E.D.N.Y. 2006) ............................................................... 12, 13

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

*Prima Tek II, LLC v. A-Roo Co.*,
    222 F.3d 1372 (Fed. Cir. 2000) ............................................................................... 15

*Wagner v. New York Marriott Marquis*,
    502 F. Supp. 2d 312 (N.D.N.Y 2007) ............................................................... 4, 5, 7

*Whitehaus Collection v. Barclay Prods.*,
    No. 11 Civ. 217, 2011 U.S. Dist. LEXIS 97554 (S.D.N.Y. Aug. 26, 2011) ................... 6, 12

STATUTES

28 U.S.C. § 1400(b) ............................................................................................................ 5

28 U.S.C. § 1404(a) ................................................................................................. 1, 4, 5, 12

iii

## I.      INTRODUCTION

Apple Inc. ("Apple") requests transfer of this case to the Northern District of California pursuant to 28 U.S.C. § 1404(a).

Apple is headquartered in the Northern District of California, and employs more than 13,850 employees at its facilities in or near Cupertino, California. Apple's accused products were designed and developed there.  Nearly all of Apple's likely witnesses and all relevant evidence are located in the Northern District of California.  Likewise, key third-party witnesses and evidence with information related to the prior art are located within the Northern District of California.  Apple has no documents or employees in the Northern District of New York with any information relevant to this case.

The plaintiff, Dynamic Advances, LLC ("Dynamic Advances") is a Texas corporation, who chose not to file suit in its home forum.  Plaintiff does not allege any corporate ties to this District in its complaint.  Furthermore, the location in New York of one of the two named inventors on the patent-in-suit (both of whom are non-parties) does not overcome the inconvenience that the numerous Apple and third-party witnesses in the Northern District of California would face absent transfer.

 Given that the vast majority of evidence is located in the Northern District of California, and the parties have no connection to this District, Apple's motion to transfer should be granted.

## II.     BACKGROUND

### A.      Plaintiff Dynamic Advances

Dynamic Advances is a non-practicing entity controlled by Audrey and Erich Spangenberg.  Declaration of David M. Lacy Kusters in Support of Apple Inc.'s Motion

to Transfer ("Lacy Kusters Decl.") Exh. 1 at 9 (designating Audrey Spangenberg as the sole manager of Dynamic Advances).  The Spangenbergs' business is to acquire patents to license and sue.  Lacy Kusters Decl. Exhs. 2–4.  Over the last decade, the Spangenbergs have acquired patents, assigned the patents to shell corporations, and filed dozens of patent lawsuits.  *Id.*  Dynamic Advances and this lawsuit repeat that pattern.

Dynamic Advances is a Texas limited liability company, which was formed in November 2011.  Lacy Kusters Decl. Exh. 1 at 4.  Its principal place of business is Tyler, Texas.  Complaint ¶ 1.  Dynamic Advances does not claim to have any employees or facilities in New York.

Dynamic Advances recently filed this action on Oct. 19, 2012.  Complaint, Dkt. 1. In its complaint, it claims to be the exclusive licensee of U.S. Patent No. 7,177,798 ("the '798 patent")[1] and accuses Apple's Siri product, which is available on select iPhones, iPads, and iPods, of infringement.  Complaint ¶¶ 8 and14.  Dynamic Advances describes the asserted patent as covering "methods for processing a natural language input" that provide "the ability to input search queries or commands in language they would use in conversation with another person."  Complaint ¶ 10.  The accused Siri products contain multiple features.  Declaration of Mark Buckley in Support of Apple Inc.'s Motion to Transfer ("Buckley Decl.") ¶ 6.  Based on Dynamic Advances' allegations, it appears that the speech-to-text and natural language processing features of Siri products are accused of infringement.  *Id.*

---

[1] Apple does not concede that Dynamic Advances is an exclusive licensee and expects to conduct discovery on this issue.

2

**B.      Apple**

Apple designs, markets, sells, and distributes consumer electronic products, including the accused Siri functionality provided on select iPhones, iPads, and iPods. Buckley Decl. ¶ 3.  Apple is incorporated under the laws of California and has its worldwide headquarters in Cupertino, California, in the Northern District of California. *Id.* ¶ 2, 4.  Approximately 13,850 employees work at or near Apple's Cupertino offices. *Id.*  Research, design, and development efforts related to the accused products are centered in, and directed from, Apple's Cupertino headquarters.  *Id.* ¶ 9.  Decisions regarding distribution, marketing, and sales of the accused products also occur in or near the Cupertino offices, as well as financial decisions, analyses, and reporting related to the Siri products.  *Id.* ¶ 13.  Nearly all of Apple's likely witnesses with relevant knowledge of the accused features in Apple's products are located in the Northern District of California, as is all relevant documentary evidence.  *Id.* ¶ 11–12.  None of Apple's employees involved with the accused features of Apple's Siri products are located in New York.[2]  *Id.* ¶ 15.  Additionally, none of the documentary or other evidence related to the accused features is in New York.  *Id.* ¶¶ 12–16.

**C.      Relevant Third Parties**

Third-party witnesses and documents potentially critical to the claims and defenses in this case are located in the Northern District of California.

- The technology behind Siri was spun out from SRI International ("SRI") into a separate company, Siri, Inc. (both located in the Northern District of

---

[2] A few Apple engineers that work on the accused Siri components work outside of Cupertino: two engineers are located in Boston and a single engineer works in each of Switzerland, Australia, and San Luis Obispo, California.  Buckley Decl. ¶ 10.

2099820.1 1/14/2013

California), which was acquired by Apple in 2010. *Id.* ¶¶ 7–8.  SRI may

have witnesses and documents relevant to this case.

- As described in greater detail below, two prior art references originate at

  companies located in the Northern District of California: at Accenture LLP

  in Palo Alto, California and at Ask.com located in Oakland, California.

  Lacy Kusters Decl. Exhs. 5 and 8.  These companies will have witnesses

  and documents relevant to Apple's defenses.  Two prior art witnesses,

  Messrs. Hughes and Warthen—who are inventors on two prior art patents

  related to the prior art systems referenced above—work and most likely

  reside in the Northern District of California.  Mr. Hughes appears to work

  at Accenture LLP and Mr. Warthen most recently worked at Datran Media,

  both located in the Northern District of California. *Id.* Exhs. 5 and 6.

## III.   LEGAL STANDARD

"Change of venue in patent cases, like other civil cases, is governed by 28

U.S.C. § 1404(a)." *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008).

Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the

interest of justice, a district court may transfer any civil action to any other district or

division where it might have been brought . . ."  28 U.S.C. § 1404(a).  Section 1404(a)

imposes a two-part test: (1) whether the case "[may] have been brought" in the

proposed transferee district and (2) "whether, considering the convenience of parties

and witnesses and the interest of justice, a transfer is appropriate." *Wagner v. New

York Marriott Marquis*, 502 F. Supp. 2d 312, 314 (N.D.N.Y 2007) (citation and internal

quotations omitted).

4

## IV.  THIS CASE SHOULD BE TRANSFERRED TO THE NORTHERN DISTRICT OF CALIFORNIA

### A.  Dynamic Advances' Claims Against Apple Might Have Been Brought in the Northern District of California

Apple is headquartered in Cupertino, California, within the Northern District of California.  Buckley Decl. ¶ 2.  Because "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides," 28 U.S.C. § 1400(b), the first requirement for transfer to the Northern District of California is satisfied.

### B.  Northern District of California is a More Convenient Forum

After passing the initial requirement that the suit might have been brought in the alternative forum, courts look to whether that alternative forum is more convenient. *Wagner*, 502 F. Supp. 2d at 314.  "District courts have broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis."  *DH Blair & Co. v. Gottdiener*, 462 F. 3d 95, 106 (2nd Cir. 2006).  Courts look to a number of factors in determining whether a transfer is appropriate, including:

1. The location of relevant documents and relative ease of access to sources of proof,

2. The convenience of witnesses,

3. The availability of process to compel the attendance of unwilling witnesses,

4. The locus of operative facts,

5. The trial efficiency and interests of justice,

6. The convenience of parties,

7. The plaintiff's choice of forum, and

8.   The relative means of the parties.

*DH Blair*, 462 F. 3d at 106–107; *Amersham Pharmacia Biotech, Inc. v. Perkin-Elmer Corp.*, 11 F. Supp. 2d 729, 730 (S.D.N.Y. 1998); *Whitehaus Collection v. Barclay Prods.*, No. 11 Civ. 217, 2011 U.S. Dist. LEXIS 97554, at *15–16 (S.D.N.Y. Aug. 26, 2011) (relying on the relative congestion of dockets in granting transfer).[3]   In this case, six of these factors support transfer to the Northern District of California, two are neutral, and none favor this case remaining in this District.

### 1.   The Vast Majority of the Sources of Proof Are In Northern California

The relative ease of access to sources of proof weighs in favor of transfer because the vast majority of evidence is located in the Northern District of California at Apple's headquarters.  *See In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) ("In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location.") (citation omitted); *Fuji Photo Film Co. v. Lexar Media, Inc.*, 415 F. Supp. 2d 370, 374 (S.D.N.Y. 2006).

Almost all of the design and development of Siri, including products with Siri capability, took place in the Northern District of California.  Buckley Decl. ¶ 9.  Siri's origins began at SRI International's Artificial Intelligence Center, located in the Northern District of California.  *Id.* ¶ 7.  The technology behind Siri was spun-out into a separate company, Siri, Inc. (located in the Northern District of California), which Apple acquired in 2010.  *Id.* ¶ 8.  As a result, nearly all of Apple's documents and employees involved in

---

[3] Attached as exhibit 20 to the Lacy Kusters Declaration, in accord with L.R. 7.1(a)(1).

6

the development of Siri are located in or near Cupertino.[4]  *Id.* ¶¶ 9–12.  As discussed above, Plaintiff accuses the speech-to-text and natural language processing features of Apple's Siri products.  *Id.* ¶ 6.  Virtually all of Apple's relevant evidence related to these Siri features is located in the Northern District of California.  *Id.* ¶ 9–12.  All of the documentary evidence related to distribution, marketing, and sales of the Siri products is also located at Apple's headquarters in Cupertino.  *Id.* ¶ 14.

Several of the prior art references originate at companies located in the Northern District of California.  For example, United States Patent number 6,446,076 ("the '076 patent") is prior art to the '798 patent.  Lacy Kusters Decl. Exh. 7.  The prior art '076 patent was assigned to Accenture LLP in Palo Alto, CA.  *Id.*  Additionally, the Ask Jeeves search engine is prior art to the '798 patent.  The prior art Ask Jeeves search engine was developed by the now-named Ask.com company, which is located in Oakland, CA.  Lacy Kusters Decl. Exh. 8.  As a result, relevant documentary evidence from these companies likely exists in the Northern District of California.

This factor strongly favors transfer to the Northern District of California.

### 2.    Northern California is More Convenient for Likely Key Witnesses

"[T]he convenience of both party and non-party witnesses is probably the single-most important factor in the analysis of whether transfer should be granted."  *Wagner*, 502 F. Supp. 2d at 315 (citation and internal quotations omitted).  The Court may

---

[4] The Court should consider the physical location of evidence, and it is irrelevant whether some of this information is stored electronically. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 316 (5th Cir. 2008) ("That access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous."); *In re Genentech, Inc.*, 566 F.3d at 1345–1346 (same).

consider the travel time, travel costs, and disruption to witnesses' regular employment when assessing this factor.  "Additional distance [from home] means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment." *In re Nintendo Co.*, 589 F.3d 1194, 1199 (Fed. Cir. 2009) (citing *In re TS Tech USA Corp.,* 551 F.3d at 1320).

Northern California is a more convenient forum for almost all fact witnesses. There are four main categories of fact witnesses in this case: witnesses related to the design, development, and sales of the accused products; prior art witnesses; Dynamic Advances' employees; and listed inventors.

Most of the key witnesses that Apple may expect to call are located in the Northern District of California.  Almost all potential witnesses who are knowledgeable about the design and development of Siri—in particular the accused speech-to-text and natural language processing components of Siri—are located in the Northern District of California.  Buckley Decl. ¶ 10–11.  These Siri engineers include, but are not limited to: Danny Lord and Siamak Hodjat (who are both employed in Cupertino) and Gunner Evermann (who recently moved to Boston but who will be traveling to Cupertino intermittently to work with his Siri team).  *Id.* ¶ 11.  If Mr. Evermann was required to be a witness at trial in the Northern District of California, he would be able to work from Apple's Cupertino headquarters.  *Id.*  Another Siri engineer—Nick Treadgold—works in Australia.  *Id.*  It would be far more convenient for Mr. Treadgold to travel to the Northern District of California than to the Northern District of New York as the quickest air travel times are approximately 13.5 and 23 hours, respectively.  Lacy Kusters Decl.

Exhs. 9 and 10.  Additionally, there are nonstop flights between San Francisco and Sydney, whereas flights to Albany require minimally two stops.  *Id.*

Additionally, all of the potential witnesses with information about distribution, marketing, and sales of products containing Siri are located in the Northern District of California.  Buckley Decl. ¶ 13.  These individuals include, but are not limited to Mark Buckley, who is a Finance Manager familiar with the costs, profits, revenues, and unit sales associated with products that contain Siri.  *Id.*  No Apple personnel with relevant knowledge are located in the Northern District of New York.  *Id.* ¶ 15.

Several third-party prior art witnesses reside in Northern California.  For example, Lucian Hughes is listed as an inventor of the prior art '076 patent.  Lacy Kusters Decl. Exh. 7.  Mr. Hughes may testify about the history and operation of the invention claimed in the prior art '076 patent.  Mr. Hughes appears to be currently an Accenture employee in San Jose, California.  *Id.* Exh. 5.  Additionally, one example reference that describes the prior art Ask Jeeves search engine is United States Patent number 6,584,464 ("the '464 patent").  *Id.* Exh. 11.  The listed inventor of the '464 patent, David Warthen, appears to have been most recently employed at Datran Media in the San Francisco Bay Area.  *Id.* Exh. 6.  Mr. Warthen may testify about the history and operation of the prior art Ask Jeeves search engine.  Northern California is a more convenient forum for these prior art witnesses.  There may be additional potential witnesses from Ask.com and Accenture LLP, the two Northern California companies where the prior art systems were developed.

For each of the witnesses located in the Northern District of California, travel to Albany is inconvenient.  Flights between San Francisco and Albany are approximately

9

seven to eight hours, as there are no direct flights.  Lacy Kusters Decl. Exh. 12.  Due to

the flight time, a witness would need to fly to Albany the day before testifying, fly home a

day after his or her expected testimony, and spend at least two nights in a hotel.  A

single day of testimony would result in at least three days of disruption to the witness's

regular employment.

      The Northern District of California is substantially more convenient for Apple's

employee witnesses and third-party witnesses, and nothing suggests it would be less

convenient for Dynamic Advances' employees.  In fact, in Dynamic Advances' filings

with the Texas Secretary of State, the only listed individuals for Dynamic Advances

reside in Texas—which is no less convenient to the Northern District of California than

to this District.  Lacy Kusters Decl. Exh. 1 at 2, 4, & 5.  For example, flight times

between Shreveport, LA (the closest major airport to Tyler, Texas) and San Francisco

are roughly equivalent to between Shreveport and Albany, at approximately 5 hours

each.  *Id.* Exhs. 13 & 14.

      The asserted '798 patent has two listed inventors: Cheng Hsu and Veera

Boonjing.  Lacy Kusters Decl. Exh. 15.  Dr. Boonjing is allegedly a professor in

Thailand.  Complaint ¶ 9.  Travelling by air from Thailand to San Francisco takes

approximately 16 hours eastbound and 18 hours westbound, with one stop.  Lacy

Kusters Decl. Exh. 16.  Similar flights between Thailand and Albany take considerably

longer, approximately 24 hours, with two stops required.  *Id.* Exh. 17.  As such, the

Northern District of California is likely more convenient to Dr. Boonjing.  Dr. Hsu is

allegedly a professor at Rensselaer Polytechnic Institute ("RPI").  Complaint ¶ 9.  While

the Northern District of New York is likely more convenient for Dr. Hsu, he is the only

potential witness known to Apple that allegedly resides within this District.  The
convenience of this one witness cannot outweigh the inconvenience, cost, and
disruption to their normal employment that the numerous Apple and third-party
witnesses in the Northern District of California would face absent transfer.[5]

The overwhelming majority of the parties' witnesses live over 2,500 miles from
Albany.  Accordingly, this factor weighs strongly in favor of transfer to the Northern
District of California.

### 3.    Important Witness May Only Be Compelled in Northern California

Allowing the case to proceed in this District may prejudice Apple, as important
non-party witnesses are beyond this Court's trial subpoena power.  For example, Lucian
Hughes, listed inventor of the prior art '076 patent, appears to be a current Accenture
employee in San Jose, California.  Lacy Kusters Decl. Exh. 5.  David Warthen, listed
inventor of the prior art '464 patent, was most recently an employee of Datran Media in
the San Francisco Bay Area.  *Id.* Exh. 6.  As described above, these witnesses may
testify about important issues related to invalidity of the asserted '798 patent.  These
witnesses likely are employed and reside in the Northern District of California, which is
beyond the subpoena power of this Court.  As such, were this case to remain in this
District, Apple would be unable to compel their attendance at trial.  The prejudice to
Apple makes this factor favor transfer to the Northern District of California.

---

[5] If the majority of evidence in a patent case will originate in a different forum, courts
have granted transfer even if one of the inventors resides in the original forum.  *See,
e.g.*, *Brandywine Commc'ns Techs. v. Cisco Sys., Inc.*, No. 6:11-cv-1843, 2012 U.S.
Dist. LEXIS 68317, at *6–22 (M.D. Fl. Mar. 26, 2012).  The *Brandywine* case is
attached as exhibit 21 to the Lacy Kusters Declaration, in accord with L.R. 7.1(a)(1).

11

### 4.      The Operative Facts Occurred in Northern California

The operative facts surrounding infringement occurred in Northern California. "Operative facts in a patent infringement action include facts relating to the design, development, and production of a patented product." *Fuji Photo Film*, 415 F. Supp. 2d at 375 (citation and internal quotations omitted).  "The locus of operative facts in patent . . . cases usually lies where the allegedly *infringing product* was designed, developed, and produced."  *Neil Bros. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 331 (E.D.N.Y. 2006) (emphasis added).  Additionally, "[w]here a party's products are sold in many states, sales alone are insufficient to establish a material connection to the forum and to override other factors favoring transfer." *Invivo Research, Inc. v. Magnetic Resonance Equip. Corp.*, 119 F. Supp. 2d 433, 439–40 (S.D.N.Y. 2000).  *See also Neil Bros.*, 425 F.Supp. 2d at 331.  As described above in connection with the first factor, virtually all of the design and development of Siri, including products with Siri capability, took place in the Northern District of California.  Buckley Decl. ¶ 9–11.  While Apple does have two retail stores in the Northern District of New York, its products containing the accused Siri functionality are sold worldwide.  Any sales in this District are insufficient to establish a material connection to this forum.  *Id.* ¶ 16.

While the '798 patent originated from research conducted at RPI, Plaintiff alleges that it is the exclusive licensee and that it holds all substantial rights to the '798 patent.  RPI is not a party to this action.  On balance, this factor favors transfer to the Northern District of California.

### 5.      Trial Efficiency and Interests of Justice Support a Transfer to Northern California

The trial efficiency and the interests of justice factor primarily relates to issues of

12

judicial economy, namely the relative congestion of the dockets.  *See Whitehaus*, 2011

U.S. Dist. LEXIS 97554, at *15.[6]  "The relative docket conditions of the transferor and

transferee courts are relevant to the determination of a motion to transfer venue

pursuant to 28 U.S.C. § 1404(a)."  *Eichenholtz v. Brennan*, 677 F. Supp. 198, 202

(S.D.N.Y. 1988).  Courts have measured docket congestion by considering the median

disposition time to resolve a case.  *See Neil Bros.*, 425 F. Supp. 2d at 334; *In re Hanger*

*Orthopedic Grp., Inc, Sec. Litig.*, 418 F. Supp. 2d 164, 171 (E.D.N.Y. 2006).  The

median time to trial for civil cases in the Northern District of California and the Northern

District of New York are 25.3 and 38.2 months, respectively.  Lacy Kusters Decl. Exh.

18.  This factor favors transfer to the Northern District of California.

<b>6.      Northern California is More Convenient for the Parties</b>

The Northern District of California is more convenient for Apple, where it

maintains its headquarters and where virtually all relevant documents and almost all

likely witnesses reside.  To travel to Albany, New York, these witnesses would need to

fly at least seven hours and take at least two airline flights.  Litigation in the Northern

District of New York would impose financial costs on Apple and require these witnesses

to spend additional time away from their regular employment.

As Dynamic Advances is located in Texas, both districts are equally convenient

for the plaintiff.  For example, flight times between Shreveport and San Francisco are

roughly equivalent to between Shreveport and Albany, at approximately 5 hours each.

Lacy Kusters Decl. Exhs. 13 and 14.

On balance, this factor favors transfer to the Northern District of California.

---

[6] Attached as exhibit 20 to the Lacy Kusters Declaration, in accord with L.R. 7.1(a)(1).

13

### 7. Dynamic Advances' Choice of Forum Should Be Given Little Weight

There is little connection between this case and the Northern District of New York. "Plaintiff's choice of forum is entitled to little deference where the 'locus of operative facts lay elsewhere,' or if the plaintiff . . . is not located in the forum district." *Clerisy Corp. v. Airware Holdings, Inc.*, No. 12-cv-6396, 2012 U.S. Dist. LEXIS 144063, at *3 (W.D.N.Y. Oct. 4, 2012).[7]  *See also Costello v. Home Depot U.S.A., Inc.*, No. 3:11-cv-00953, 2012 U.S. Dist. LEXIS 124707, at *19–20 (D. Conn. Apr. 10, 2012) ("When plaintiffs choose a forum that is not any plaintiff's home forum, that choice of forum is accorded considerably less weight.").[8]  Plaintiff is a Texas limited liability company, headquartered in Tyler, Texas.  Complaint ¶ 1.  Plaintiff has no known employees or facilities in this District.  There are only two known connections between this suit and this District: one of the two inventors of the '798 patent is a professor at RPI and RPI was the original assignee of the patent.  RPI is not a party to this action.

Dynamic Advances alleges that the '798 patent was the joint work of Cheng Hsu and Veera Boonjing, when Dr. Boonjing was a doctoral candidate.  Complaint ¶ 9.  Apple intends to conduct discovery into whether the patent was the result of Dr. Boonjing's doctoral thesis.  Dr. Hsu's connection to the purported invention, however, is likely tenuous.  For example, Dr. Hsu's research interests focus not on the field of the patent (*e.g.*, the processing of language by a computer) but, instead, on service-value networks, sustainability design for products, and electrical grids for home-based energy generation.  Lacy Kusters Decl. Exh. 19.  While Dr. Hsu may have some knowledge of

---

[7] Attached as exhibit 22 to the Lacy Kusters Declaration, in accord with L.R. 7.1(a)(1).
[8] Attached as exhibit 23 to the Lacy Kusters Declaration, in accord with L.R. 7.1(a)(1).

the purported invention, Dr. Boonjing appears to be the primary inventor.  Dynamic
Advances alleges that Dr. Boonjing is currently a professor in Thailand.  Complaint ¶ 9.

The second supposed tie between this case and this District—RPI's original
ownership of the patent—is similarly too tenuous for this District to retain this case.
Dynamic Advances asserts that RPI transferred "all substantial rights" to the '798 patent
to Dynamic Advances.  Complaint ¶ 8.  RPI is not a named party in this action.  If RPI
retains rights to the '798 patent, then RPI is an essential party to this litigation and
Dynamic Advances may lack standing to bring this suit.  *See, e.g.*, *Prima Tek II, LLC v.
A-Roo Co.*, 222 F.3d 1372, 1377–78 (Fed. Cir. 2000).  If RPI has no remaining rights—
as Dynamic Advances seems to assert—then RPI also has no interest in this litigation.

Because there is little connection to this District and this District is not Plaintiff's
home forum, Plaintiff's choice of venue should be accorded little weight.  As the majority
of the remaining factors tip strongly in Apple's favor, plaintiff's choice of forum should
not prevent transfer.

### 8.   The Relative Means of the Parties Does Not Preclude Transfer to Northern California

There is no question that Apple has the means to litigate this case in either
forum.  The same is true for Dynamic Advances.  Dynamic Advances is one of the many
shell corporations owned by Audrey and Erich Spangenberg.  Lacy Kusters Decl. Exhs.
1–4.  In 2007 alone, the Spangenberg entities filed reportedly "at least 22 suits against
some 215 defendants."  *Id.* Exh. 2 at 1.  According to one interview of Mr. Spangenberg,
he "typically has eight or nine lawsuits going at any given time."  *Id.* Exh. 3 at 2.  These
lawsuits have been lucrative, resulting in reportedly over $100 million in judgments and
settlements through 2007.  *Id.* Exh. 4 at 3.  Dynamic Advances, as a Spangenberg

15

entity, has the means to litigate this case in either forum.  Additionally, regardless of its means, the costs of litigating in either this District or the Northern District of California are substantially the same for Dynamic Advances.  As such, this factor is neutral.

## V.     CONCLUSION

This case could have, and should have, been brought in the Northern District of California, a forum that is far more convenient.  Six of the eight convenience factors favor transfer, two are neutral, and none support this District retaining the case.  As such, this Court should transfer this case to the Northern District of California.

Dated:  January 14, 2013                    BOND, SCHOENECK & KING, PLLC

By:   /s/ George R. McGuire
George R. McGuire (Bar Roll 509058)
One Lincoln Center
Syracuse, NY  13202
Tel:      (315) 218-8515
Fax:      (315) 218-8415
gmcguire@bsk.com

Attorneys for Defendant
APPLE INC.

16

*Of Counsel:*

FENWICK & WEST LLP

Teresa Corbin
Hector Ribera
David Lacy Kusters
Will Moseley
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone:   (415) 875-2300
tcorbin@fenwick.com
hribera@fenwick.com
dlacykusters@fenwick.com
wmoseley@fenwick.com

17

18