UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
ALBANY DIVISION

DYNAMIC ADVANCES, LLC,

          Plaintiff,

    v.

APPLE INC.,

          Defendant.

Civil Action No. 1:12-cv-1579-DNH-DEP

JURY TRIAL DEMANDED

**DYNAMIC ADVANCES, LLC'S OPPOSITION
TO APPLE INC.'S MOTION TO TRANSFER**

## TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................ 2

II. COUNTER STATEMENT OF FACTS ...................................................... 3

III. ARGUMENT ............................................................................................. 6

   A. Apple Must Make a Strong Case for Transfer...................................... 6

   B. Apple Cannot Meet its Burden of Establishing that the Balance of
      Convenience and the Interest of Justice Weigh in Favor of Transfer .................. 8

      1. Dynamic Advance's Choice of Forum Is Entitled to Considerable
         Weight............................................................................................ 8

      2. The Locus of Operative Facts Lies in this District ........................ 10

      3. This Court Has Greater Familiarity with the Governing Law.......... 11

      4. Transfer to the Northern District of California Would Improperly Shift
         Any Inconvenience from Apple to Dynamic Advances ................. 12

      5. Public Interest Favors Local Adjudication in this District .............. 13

      6. Apple Understates the Financial Disparity Between the Parties.... 14

      7. Apple Fails to Show that the Convenience and Attendance of the
         Material Witnesses Favors Transfer............................................. 15

         a) Convenience of Non-Party Witnesses Is the Key Factor in Weighing
            Witness Convenience .......................................................... 15

         b) Apple Fails to Establish that Party Witnesses Likely to Testify at
            Trial Would Be Inconvenienced ............................................ 19

      8. Apple Has Not Shown that the Availability of Compulsory Process
         Weighs In Favor of Transfer......................................................... 21

      9. Location of Documents and Evidence Is Entitled to Little Weight.................. 22

      10. Apple Has Not Shown Trial Efficiency Favors Transfer................................. 24

   IV. CONCLUSION.......................................................................................... 25

i

# TABLE OF AUTHORITIES

## Cases

*Advanced Fiber Techs. (AFT) Trust v. J&L Fiber Servs., Inc.*, No. 07-CV-1191,
   2008 U.S. Dist. LEXIS 91795 (N.D.N.Y. Nov. 12, 2008).................. 7, 8, 12, 15, 24, 25

*Alfadda v. Fenn*,
   159 F. 3d 41 (2d Cir. 1998)................................................................................... 13, 14

*Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.*,
   457 F. Supp. 2d 474 (S.D.N.Y. 2006)......................................................................... 12

*Breeden v. Tricom Bus. Sys., Inc.*,
   244 F. Supp. 2d 5 (N.D.N.Y. 2003).................................................................. 12, 20, 22

*Citigroup Inc. v. City Holding Co.*,
   97 F. Supp. 2d 549 (S.D.N.Y. 2000).......................................................................... 21

*DealTime.com Ltd. v. McNulty*,
   123 F. Supp. 2d 750 (S.D.N.Y. 2000)...................................................... 16, 18, 19, 20

*Defenshield Inc. v. First Choice Armor & Equip., Inc.*, No. 5:10-CV-1140,
   2012 U.S. Dist. LEXIS 44276 (N.D.N.Y.  Mar. 29, 2012)........................................... 11

*Excelsior Designs, Inc. v. Sheres*,
   291 F. Supp. 2d 181 (E.D.N.Y. 2003)......................................................................... 24

*Fuji Photo Film Co. v. Lexar Media, Inc.*,
   415 F. Supp. 2d 370 (S.D.N.Y. 2006)......................................................................... 11

*Gulf Oil Corp. v. Gilbert*,
   330 U.S. 501 (1947) ....................................................................................... 8, 13, 14

*Hypoxico, Inc. v. Colo. Altitude Training LLC*, No. 02 Civ. 6191,
   2003 U.S. Dist. LEXIS 11862 (S.D.N.Y. July 8, 2003)......................................... 13, 14

*Illumina, Inc. v. Affymetrix, Inc.*, No. 09-CV-277,
   2009 U.S. Dist. LEXIS 86339 (W.D. Wis. Sept. 18, 2009) ........................................ 19

*In re Affymetrix, Inc.*, Misc. No. 913,
   2010 U.S. App. LEXIS 7968 (Fed. Cir. Apr. 13, 2010)........................................ 19, 23

*In re Genentech*,
   566 F.3d 1338 (Fed. Cir. 2009) ................................................................................. 23

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008)...................................................................................... 23

*Iragorri v. United Techs. Corp.*,
   274 F.3d 65 (2d Cir. 2001).........................................................................................8

*N.Y. Marine and Gen. Ins. Co. v. Lafarge N. Am., Inc.*,
   599 F.3d 102 (2d Cir. 2010).....................................................................................7

*Plastic Suppliers, Inc. v. Cenveo, Inc.*, No. 3:10-CV-0512,
   2011 U.S. Dist. LEXIS 5186 (N.D.N.Y. Jan. 19, 2011). .....................................16, 19

*Race Safe Sys. v. Indy Racing League*,
   251 F. Supp. 2d 1106 (N.D.N.Y. 2003)............................................................6, 8, 10

*Rescuecom Corp. v. Chumley*,
   522 F. Supp. 2d 429 (N.D.N.Y. 2007)........................................................................6

*Research Found. of State Univ. v. Luminex Corp.*, No. 1:07-CV-1260,
   2008 U.S. Dist. LEXIS 88618 (N.D.N.Y. Nov. 3, 2008).........................10, 15, 19, 22

*Sec. Mut. Life Ins. Co. v. Shapiro*, No. 3:09-CV-0316,
   2009 U.S. Dist. LEXIS 82934 (N.D.N.Y. Sept. 11, 2009)........................................21

**Statutes**

28 U.S.C. § 1404.............................................................................................3, 6, 13, 20

I.   **INTRODUCTION**

The Court should deny Apple's motion to transfer because Apple has not met its burden of proving that the Northern District of California is a clearly more convenient venue than this judicial district.  Dynamic Advances chose this forum because many of the pertinent facts in this patent infringement case are tied to this judicial district.  The natural language processing technology claimed in the patent-in-suit, U.S. Patent No. 7,177,798 ("the '798 Patent"), was conceived at Rensselaer Polytechnic Institute ("RPI")—which resides locally in this judicial district.  The technology was developed in this judicial district, and RPI directed and managed the prosecution of the '798 Patent in this judicial district.  RPI also licensed the '798 Patent in this district when it entered into an exclusive license agreement for the '798 Patent with Dynamic Advances.

Moreover, because many of the operative facts occurred in this district, a substantial number of documents and witnesses are also located in this district.  The convenience of the witnesses, and in particular third-party witnesses, strongly weighs in favor of adjudicating this case in this district.  Notably, one of the inventors of the '798 Patent still teaches at RPI and resides in this district.  Further, five of the witnesses knowledgeable about RPI's licensing efforts are located in this district.  All of these witnesses would be substantially inconvenienced if they were required to testify in another district court more than 3,000 miles away.

Finally, the public interest in adjudicating a controversy involving infringement of a local research university's intellectual property favors litigating this case in the Northern District of New York.  As a research facility and pioneer in transferring technology from this district to the marketplace, RPI has invested heavily to develop and

2

protect against unauthorized use of its intellectual property.  Thus, this case should be heard and tried in this district.

For these reasons, and others set forth below, Apple has failed to carry the significant burden required to justify transfer under 28 U.S.C. § 1404(a).  Dynamic Advances therefore respectfully requests that the Court deny Apple's Motion to Transfer.

## II.   COUNTER STATEMENT OF FACTS

Dynamic Advances is the exclusive licensee for RPI's '798 Patent.  (Kudla Decl.[1] ¶ 5.)  RPI is Dynamic Advances' sole client and its only operational directive is to develop, utilize, and monetize RPI's intellectual property to the fullest extent so that RPI's innovations can be enjoyed by the general public to the benefit of RPI and its mission.  (*Id.*)  While not a party to this action, RPI maintains a financial interest in the outcome of this litigation.  (*Id.* ¶ 7.)  Dynamic Advances and RPI entered into an exclusive license agreement in December 2011.  (*Id.*)  Pursuant to the agreement, RPI continues to own the '798 Patent and Dynamic Advances has the exclusive right to sublicense or prosecute any infringement of the patent.  (*Id.*)  Although Dynamic Advances has the sole right to enforce the patent and collect damages for infringement, RPI retains a financial interest in any successful licensing or enforcement efforts.  (*Id.*)

Founded in Troy, New York, in 1824, RPI is the oldest technological university in the English-speaking world and the first university in the United States to operate an on-campus business incubator to transfer technology from the laboratory to the

---

[1] Declaration of Ronald M. Kudla In Supprt Of Plaintiff Dynamic Advances, LLC's Opposition to Defendant Apple Inc.'s Motion to Transfer, attached as Exhibit 1.

marketplace.  (*Id.* ¶ 8.)  Research and development is the backbone of RPI.  And in an effort to commercialize and monetize the technology it develops, RPI's Office of Intellectual Property, Technology Transfer and New Ventures ("Tech Transfer Office") licenses its intellectual property to firms like Dynamic Advances.  (*Id.* ¶ 9.)  The income RPI generates from commercializing and monetizing its intellectual property enables RPI to continue funding technology research and satisfy the university's mission, which is the "application of science to the common purposes of life."  (*Id.*)  RPI's licensing and patent reimbursement has increased from $62,000 in 2002 to $1.8 million in 2012.  (*Id.* ¶ 10.)  As a result, local jobs are created when RPI's Tech Transfer Office has the capital to help start companies based on RPI's technology, such as Ecovative Design of Green Island and BullEx Digital Safety of Albany.  (*Id.*)

The natural language processing technology claimed in the '798 Patent was conceived by Dr. Cheng Hsu and Dr. Veera Boonjing and developed under the RPI Tech Transfer Office.  (Hsu Decl.[2] ¶ 5.)  At the time they invented the patented technology, Dr. Hsu was a Professor of Decision Sciences and Engineering Systems at RPI and Dr. Boonjing was an RPI doctoral candidate at the Department of Decision Sciences and Engineering Systems.  (*Id.* ¶ 6.)  With the help of Charles Rancourt and Peter Pritchard from the Tech Transfer Office, RPI conducted a market analysis of Drs. Hsu and Boonjing's invention and filed an application with the U.S. Patent & Trademark Office seeking a patent on the novel technology.  (Kudla Decl. ¶ 11.)  The inventors and RPI successfully prosecuted their patent and the U.S. Patent & Trademark Office issued the '798 Patent on February 13, 2007.  (*Id.*)

---

[2] Declaration of Cheng Hsu In Support Of Plaintiff Dynamic Advances, LLC's Opposition to Defendant Apple Inc.'s Motion to Transfer, attached as Exhibit 2.

Under the direction of Ronald M. Kudla, RPI's Tech Transfer Office has been instrumental in expanding its intellectual property commercialization and monetization program.  (Kudla Decl. ¶ 13.)  RPI's Tech Transfer Office supports researchers in protecting intellectual property developed at RPI and helps bring such inventions into the commercial marketplace.  (*Id.*)  RPI's Tech Transfer Office evaluates new technologies for patentability and marketability, advises researchers through the patent prosecution process, and explores licensing opportunities.  (*Id.*)

The pertinent facts related to the asserted patent in this case—from the conception and development of the technology claimed in the '798 Patent to the patent application process, market analysis of the invention, and subsequent exclusive licensing engagement between RPI and Dynamic Advances—occurred in this district. (*Id.* ¶ 11.)  The patent prosecution files, file wrapper histories, design drawings, and invention disclosure records related to the '798 Patent are located in this district.  (*Id.* ¶ 14.)  The market analysis and licensing documents, litigation files, and other documents related to RPI's monetization efforts for the '798 Patent are located in this district.  *Id.* Important third-party witnesses, including Dr. Hsu, an inventor of the '798 Patent, and Mr. Kudla of RPI's Tech Transfer Office, are all located in this district.  (*Id.* ¶ 1; Hsu Decl. ¶ 1.)  Charles Rancourt and Peter Pritchard, former RPI Tech Transfer Office employees that assisted in the evaluation and licensing of the '798 Patent, all reside in this district as well.  (Kudla Decl. ¶ 15.)  With respect to facts surrounding the creation of the '798 Patent, no relevant documents or witnesses are located in the Northern District of California.  (*Id.* ¶ 16.)

III.   **ARGUMENT**

A. **Apple Must Make a Strong Case for Transfer**

If the movant satisfies its burden of proof, a district court can transfer a case to any other district where the case might have been brought "[f]or the convenience of parties and witnesses, in the interest of justice."  28 U.S.C. § 1404(a).  It is well established that whether a transfer is warranted pursuant to § 1404(a) lies "within the broad discretion of the district court and is determined upon notions of convenience and fairness on a case by case basis."  *Race Safe Sys. v. Indy Racing League*, 251 F. Supp. 2d 1106, 1110 (N.D.N.Y. 2003) (citing *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992)).

Motions to transfer venue are subject to a "two-part test: (1) whether the action to be transferred might have been brought in the transferee venue; and (2) whether the balance of convenience and justice favors transfer."  *Rescuecom Corp. v. Chumley*, 522 F. Supp. 2d 429, 448-49 (N.D.N.Y. 2007).[3]  The relevant factors for part two of the test include:

(1) "the weight accorded a plaintiff's choice of forum";

(2) "the location of relevant documents and the relative ease of access to those sources of proof";

(3) "the situs of the operative events in issue";

(4) "the convenience of witnesses";

(5) "the availability of process to compel the attendance of unwilling witnesses";

---

[3] Dynamic Advances does not dispute that venue would have been proper in the Northern District of California at the time this suit was initiated.  Apple resides within the Northern District of California and has committed acts of infringement within that district.  This case should not be transferred, however, because Apple has not met its burden of establishing a strong case for transfer.

(6) "the convenience of the parties";

(7) "judicial efficiency and the interests of justice";

(8) "the relative means of the parties"; and

(9) "the comparative familiarity of each district with the governing law."

*Id.* at 449.

The party seeking transfer "bears the burden of proof and, 'therefore it is his or her responsibility to establish in [the] pleadings and affidavits the conditions necessary to justify transfer.'"  *Advanced Fiber Techs. (AFT) Trust v. J&L Fiber Servs., Inc.*, No. 07-CV-1191, 2008 U.S. Dist. LEXIS 91795, at *5-6 (N.D.N.Y. Nov. 12, 2008).  It is settled law in this Circuit that "the party requesting transfer carries the 'burden of making out a strong case for transfer.'"  *N.Y. Marine and Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010) (citation omitted).  Indeed, district courts in this Circuit have "consistently applied the clear and convincing standard in determining whether to exercise discretion to grant a transfer motion."  *Id.*  Ultimately, Apple must establish by clear and convincing evidence that transfer would "prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense."  *Advanced Fiber*, 2008 U.S. Dist. LEXIS 91795, at *6. Here, one factor is neutral and none of the factors weigh in favor of transfer from the Northern District of New York.

**B. Apple Cannot Meet its Burden of Establishing that the Balance of Convenience and the Interest of Justice Weigh in Favor of Transfer**

**1. Dynamic Advance's Choice of Forum Is Entitled to Considerable Weight**

Dynamic Advance's choice of forum is entitled to dispositive weight given that the balance of factors does not weigh in favor of transfer. *See, e.g., Iragorri v. United Techs. Corp.*, 274 F.3d 65, 70-71 (2d Cir. 2001) ("Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.") (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)); *Advanced Fiber*, 2008 U.S. Dist. LEXIS 91795, at *17 ("[A] plaintiff's choice of forum is . . . entitled to considerable weight and should not be disturbed unless other factors weight strongly in favor of transfer."); *Race Safe*, 251 F. Supp. 2d at 1111 ("A court must give significant consideration to a plaintiff's choice of venue, not disturbing it unless other factors weigh strongly in favor of transfer.").

There is a substantial nexus between this forum and Dynamic Advances' claim, but there is no legal requirement that a substantial nexus exist between the chosen forum and the claim for a plaintiff's choice of forum to receive deference; instead there need only be some material relationship. *Race Safe*, 251 F. Supp. 2d at 1111. Therefore, as long as there is some material connection between the chosen venue and the facts or issues of the case, the plaintiff's choice of forum will be disturbed only if the other factors weigh strongly in favor of transfer. *Id.*

Dynamic Advances' choice of forum should be accorded considerable weight because Dynamic Advances chose to litigate its claim in the Northern District of New York, and a material relationship exists between this district and the facts and issues of

the case.[4]  The conception and development of the invention asserted in the '798

Patent by Dr. Cheng Hsu and Dr. Veera Boonjing occurred in this district.  (Hsu Decl. ¶

5.)  The inventors executed documents in this district assigning all of their rights in the

invention and any patent applications or resulting patents on the invention to RPI.

(Kudla Decl. ¶ 11.)  RPI is located in this district and has operated its technology

licensing program through RPI's Technology Transfer Office in this district since 1983.

(*Id.* ¶ 8.)  Efforts to commercialize and monetize the patent-in-suit occurred in this

district.  (*Id.* ¶ 6.)  Finally, the '798 Patent exclusive license agreement, which provides

for a financial interest in the outcome of this litigation to both RPI and Dynamic

Advances, was negotiated and executed in this district.  (*Id.* ¶ 7.)

        Numerous pertinent facts occurred in this district and many of the sources of

proof remain in this district, contrary to Apple's contention that "little connection" exists

between this case and the Northern District of New York.  Indeed, Apple has already

indicated that it intends to take discovery into Dr. Hsu's role in the conception of the

'798 Patent.  (Dkt. No. 38, Apple's Brief at 14-15.)  Apple also questions whether RPI

transferred exclusive rights to the '798 Patent to Dynamic Advances.  (*Id.*)  Of course,

the facts related to these issues occurred in this district.  Moreover, the evidence related

to these topics is located in this district because relevant documents and knowledgeable

witnesses, including Dr. Hsu and Mr. Kudla, reside in this district.  (Kudla Decl. ¶ 14;

Hsu Decl. ¶ 4.)

--------------------------------

[4] Apple contends that Dynamic Advances' choice of forum is entitled to little weight because it did not file
in its "home" district.  (Dkt. No. 38, Apple's Brief at 14.)  Although Dynamic Advances does not have an
office in this district, its only function is to serve as the exclusive licensee to enforce and monetize RPI's
intellectual property assets, including the '798 Patent.  And even though Dynamic Advances is
incorporated in Texas, it conducts all of its business on behalf RPI, its sole client that is located in this
district.  Putting corporate formalities aside, this district is Dynamic Advances' home district for all
practical purposes.

Accordingly, Dynamic Advances' choice of forum should not be disturbed unless Apple can show that Northern California is clearly more convenient. Apple has not met that burden, and, therefore, this factor weighs strongly against transfer.

### 2.  The Locus of Operative Facts Lies in this District

The place where the operative facts occurred is a factor that is balanced to determine the appropriate venue for trial. *Race Safe,* 251 F. Supp. 2d at 1110. As explained above, Dynamic Advances chose to file suit in this district because key facts occurred in this district. *Research Found. of State Univ. v. Luminex Corp.*, No. 1:07-CV-1260, 2008 U.S. Dist. LEXIS 88618, at *20 (N.D.N.Y. Nov. 3, 2008) (weighing the location of operative facts against transfer in the context of a university's patent lawsuit because "significant events" including "original License Agreement and the development of the patented technology occurred in New York").

Although Apple contends the accused infringing products were designed and developed in California, many key events related to the '798 Patent occurred in this district in Troy, New York. The invention claimed in the asserted patent was conceived and developed by Dr. Hsu and Dr. Boonjing in this district. (Hsu Decl. ¶ 5.) The inventors assigned their rights to the '798 Patent to their employer at that time in this district. (Kudla Decl. ¶ 11.) This district was also where RPI's Tech Transfer Office evaluated the '798 Patent, advised Dr. Hsu and Dr. Boonjing through the patent process, and facilitated prosecution of the patent with the assistance of prosecution counsel. *Id.* Significantly, RPI's efforts to license the '798 Patent occurred in this district, and Dynamic Advances and RPI entered into their exclusive license agreement in this district in 2011. (*Id.* ¶ 7.) Finally, Apple sells accused infringing products in this

district, both online and through its retail stores.  (Huang Decl.[5] ¶ 2; Apple Brief at 12

("products containing the accused Siri functionality are sold worldwide"; "[Apple] does

have two retail stores in the Northern District of New York").)

Apple concedes that "the '798 Patent originated from research conducted at

RPI," but argues that RPI is not a party to this action.  (Dkt. No. 38, Apple's Brief at 12.)

Apple's argument confuses the plaintiff's choice of forum factor with the locus of

operative facts factor.  The locus of operative facts factor is not a party-specific inquiry.

Instead, this factor goes to where the operative facts actually occurred, *i.e.*, where the

patented invention was designed, developed, and produced or where the infringing

products are sold.  *Defenshield Inc. v. First Choice Armor & Equip., Inc.*, No. 5:10-CV-

1140, 2012 U.S. Dist. LEXIS 44276, at *39-40 (N.D.N.Y.  Mar. 29, 2012) ("venue

analysis may demonstrate that there [are] multiple loci of operative facts").[6]

As a result, this factor weighs against transfer.

### 3.  This Court Has Greater Familiarity with the Governing Law

Though all federal courts have familiarity with patent law, Apple has raised

arguments that put New York state law at issue.  For example, Apple's Tenth Affirmative

Defense challenges Dynamic Advances' standing to assert the patent-in-suit.  (Dkt. No.

27, Apple's Answer at ¶ 31.)  Apple also contends that it will seek discovery into the

relationship between Dynamic Advances and RPI, presumably in an attempt to support

---

[5] Declaration of Lenny Huang In Supprt Of Plaintiff Dynamic Advances, LLC's Opposition to Defendant Apple Inc.'s Motion to Transfer, attached as Exhibit 3.
[6] Apple's reference to *Fuji Photo Film* is distinguishable.  *Fuji Photo Film Co. v. Lexar Media, Inc.*, 415 F. Supp. 2d 370 (S.D.N.Y. 2006).  In *Fuji Photo*, the infringing products were "designed, developed, and produced" in the Northern District of California but "none of the critical events took place in New York" and "prosecution, conception and reduction to practice of the patents-in-suit" all occurred in Japan.  Here, many of the critical events took place in New York, including the conception and prosecution of the '798 Patent.

its Affirmative Defense.  (Dkt. No. 38, Apple's Brief at 2.)  Any standing inquiry would require the Court to analyze and interpret the exclusive license agreement.  And importantly, that agreement was negotiated and executed in this district, and RPI and Dynamic Advances chose New York law to govern the agreement.  (Kudla Decl. ¶ 7.)

This Court's familiarity with issues arising from New York state law is greater than the Northern District of California's familiarity.  *See, e.g., Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.*, 457 F. Supp. 2d 474, 479 (S.D.N.Y. 2006) ("[W]here there are state law claims, the 'forum's familiarity with governing law supports retention of the action.'").  And, in particular, this Court's familiarity with New York state law as it relates to the interpretation of a contract governed by New York law is greater than the Northern District of California's familiarity with such law.  *See Breeden v. Tricom Bus. Sys., Inc.*, 244 F. Supp. 2d 5, 10-11 (N.D.N.Y. 2003) (stating that since New York law will govern contract issues raised in the case, "the Northern District of New York is more familiar with the governing law of the case").

As a result, this factor weighs against transfer.

### 4. Transfer to the Northern District of California Would Improperly Shift Any Inconvenience from Apple to Dynamic Advances

"[A] transfer of venue should not merely shift the burden of inconvenience from one party to the other."  *Advanced Fiber*, 2008 U.S. Dist. LEXIS 91795, at *9 (citation omitted).  The convenience of the parties factor does not weigh in favor of transfer if such transfer would merely shift the inconvenience of litigating in a particular forum from one party to the other.  *Id.*

Apple contends that the Northern District of California would be more convenient for Apple.  (Dkt. No. 38, Apple's Brief at 13.)  But transferring this action to California

would not be more convenient **for the parties**.  While Dynamic Advances is a Texas

entity, its only client RPI resides in this district, and its sole operational directive is to

license RPI's patented inventions.  Thus, much of the documentary evidence is located

in this district, and many of the witnesses are RPI employees and/or reside in this

district.  Transferring this case would require Dynamic Advances to fly RPI witnesses—

including one of the inventors—across the country and disrupt their regular employment

schedules. (Kudla Decl. ¶ 17.)  While certain witnesses may be able to work remotely,

Dr. Hsu cannot teach his RPI students from California.  (Hsu Decl. ¶ 7.)  Transferring

this case to Northern California would not be more convenient for Dynamic Advances.

Thus, transferring this case to California would improperly shift the burden of

inconvenience from Apple to Dynamic Advances.

This factor weighs against transfer.

### 5.  Public Interest Favors Local Adjudication in this District

In determining whether cases should be transferred to a different forum, the

Court must consider the forum's interest in adjudicating the dispute.  *Gulf Oil Corp. v.*

*Gilbert*, 330 U.S. 501, 508-09 (1947); *see also Alfadda v. Fenn*, 159 F. 3d 41, 46 (2d

Cir. 1998) (noting that public interests factor includes the forum's interest in resolving a

dispute that has an impact on the local community).  Although *Gulf Oil* and *Alfadda*

address a *forum non conveniens* motion to dismiss, courts in this Circuit apply the *Gulf*

*Oil* factors to § 1404(a) motions to transfer.  *See*, *e.g.*, *Hypoxico, Inc. v. Colo. Altitude*

*Training LLC*, No. 02 Civ. 6191, 2003 U.S. Dist. LEXIS 11862, at *22 (S.D.N.Y. July 8,

2003) ("In ruling on a motion to transfer, the Court should consider both the interest of

the litigants and the public interest.") (citing *Gulf Oil*, 330 U.S. at 508).  The public

interest includes, among other things, the interest the forum has in deciding disputes that concern the local community, and the forum's interest in resolving any state-law matters in the state from which the governing law derives.  *Gulf Oil*, 330 U.S. at 508-09; *see also Alfadda*, 159 F. 3d at 46 (noting that public interests factor includes the forum's interest in resolving a dispute that has an impact on the local community); *Hypoxico*, 2003 U.S. Dist. LEXIS 11862, at *23 ("New York has a significant interest in the resolution of a patent infringement case concerning the sale and use of allegedly infringing products in New York.").

Here, the Court should consider and weigh the importance of deciding a patent infringement case in this forum because it involves the unauthorized use of a local university's intellectual property by one of the largest companies in the world.  RPI's licensing and patent reimbursement has increased from $62,000 in 2002 to $1.8 million in 2012.  (Kudla Decl. ¶ 10.)  As a result of the increased revenue, local companies such as Ecovative Design of Green Island and BullEx Digital Safety of Albany are established and eventually spun-off from RPI and its incubator program.  (*Id.*)

This case should be decided in the Northern District of New York because it impacts the local community.  RPI—a university in this district—has a financial interest in the outcome of this litigation involving a patent it owns, and this district is also where an RPI professor and RPI doctoral student conceived and created the patented invention.

### 6.  Apple Understates the Financial Disparity Between the Parties

"Where a **disparity exists between the means of the parties** …, the court may consider **the relative means** of the parties in determining whether to transfer."

14

*Advanced Fiber*, 2008 U.S. Dist. LEXIS 91795, at *15 (citing *Miller v. Bombardier, Inc.*, No. 93 Civ. 0376, 1993 U.S. Dist. LEXIS 13319, at *13 (S.D.N.Y. Sept. 23, 1993)) (emphasis added).  Although Apple wrongly asserts that the cost of litigating in the Northern District of California or this district is "substantially the same for Dynamic Advances" (Dkt. No. 38, Apple's Brief at 16), that is not the proper inquiry for this factor. The test for this factor is not whether the costs would be the same for Dynamic Advances in either forum.  Instead, the Court must inquire into the *relative* disparity of the parties' resources.  *Advanced Fiber*, 2008 U.S. Dist. LEXIS 91795, at *15.

Apple's suggestion that the *relative* means of the parties are similar is frivolous. The financial figures Apple cites regarding Dynamic Advances' owners (Apple Brief at 15) establishes the vast asymmetry in the financial resources of the two companies. Apple is one of the largest and most successful companies in the world and has $137 billion in cash on hand alone—which is slightly more cash on hand than the total annual revenues of Hewlett-Packard and Vietnam's nominal GDP.  (Huang Decl. ¶ 3.)  Apple's litigation budget totals hundreds of millions of dollars.  In one patent infringement dispute alone, Apple spent at least $32 million in legal costs. (*Id.* ¶ 4.)

Thus, when applying the appropriate test—the *relative* disparity in the means of the parties—this factor weighs against transfer.

### 7. Apple Fails to Show that the Convenience and Attendance of the Material Witnesses Favors Transfer

#### a) Convenience of Non-Party Witnesses Is the Key Factor in Weighing Witness Convenience

"Convenience of the witnesses is 'probably the single-most important factor in the analysis of whether transfer should be granted.'"  *Research Found.*, 2008 U.S. Dist.

LEXIS 88618, at *9 (citing *In re Bennett Funding Group, Inc.*, 259 B.R. 243, 249

(N.D.N.Y. 2001)).  "While the convenience of party witnesses is a factor to be

considered, the convenience of non-party witnesses is the more important factor."

*Plastic Suppliers, Inc. v. Cenveo, Inc.*, No. 3:10-CV-0512, 2011 U.S. Dist. LEXIS 5186,

at *12 (N.D.N.Y. Jan. 19, 2011) (citation omitted).  "In evaluating this factor, the court

should look beyond the quantity of the witnesses and assess the quality of the

testimony to be offered."  *DealTime.com Ltd. v. McNulty*, 123 F. Supp. 2d 750, 755

(S.D.N.Y. 2000) (quotation marks omitted).

  Here, Apple cannot show that the convenience of material non-party witnesses

favors transfer.  In patent infringement cases, the named inventors of the asserted

patents are key witnesses.  For example, Troy, New York, resident and third-party, Dr.

Hsu, will likely testify about the conception and development of the technology claimed

in the '798 Patent.  It will be far more convenient for Dr. Hsu to travel to this Court to

testify than it would be to travel more than 3,000 miles to testify in California.  Moreover,

Dr. Hsu is a member of the faculty at the School of Engineering at RPI and, in addition

to his research commitments, maintains a full-time teaching schedule at the university.

(Hsu Decl. ¶ 7.)  If Dr. Hsu was required to travel to trial in the Northern District of

California it would disrupt his employment and effectively preclude Dr. Hsu from

maintaining his teaching schedule at the university.

  The convenience of a key third-party RPI witness who works and resides in this

district, Ronald M. Kudla, likewise weighs against transfer.  Mr. Kudla is the Executive

Director of RPI's Tech Transfer Office and is knowledgeable about the technology

incubation and licensing program at RPI as well as RPI's role in evaluating new

technology for patentability and marketability, protection of RPI intellectual property, and

the prosecution and licensing of patents developed at RPI.  (Kudla Decl. ¶ 1, 13.)   He is

also the RPI signatory for RPI's exclusive license agreement with Dynamic Advances.

(*Id.* ¶ 7.)  It would be far more convenient for Mr. Kudla to travel to this Court than to the

Northern District of California.

Other non-party witnesses knowledgeable about RPI's valuation and licensing of

the '798 Patent include Charles Rancourt and Peter Pritchard.  (*Id.* ¶ 11.)  While these

individuals no longer work at RPI, upon information and belief, they remain located in

this district and would likely find it far more convenient to testify in this district as

opposed to the Northern District of California.  (*Id.* ¶ 15.)

Finally, Apple may decide to seek discovery from prosecution counsel for the

'798 Patent—Randy J. Pritzker, of Wolf Greenfield & Sacks, P.C.—whose office is in

Boston.  (*Id.* ¶ 12.)  Given that the distance from Boston to Albany is only about 140

miles and Boston to San Francisco is approximately 2700 miles, testifying in this district

would likely be a more convenient forum for prosecution counsel than testifying in

Northern California.  (Huang Decl. ¶ 5.)

Apple fails to establish why the Court should give any weight to the convenience

of the two "potential" third-party witnesses Apple identifies, Lucien Hughes and David

Warthen.[7]  According to Apple, these individuals "appear[ ]" to be located in the

Northern District of California and "may" testify about certain prior art.  But Apple has

apparently never communicated with either of these individuals.  (Dkt. No. 38, Apple's

---

[7] Apple's motion vaguely refers to "additional potential witnesses from Ask.com and Accenture LLP" without identifying who the witnesses are except to say that these companies are "where the prior art systems were developed."  (Dkt. No. 38, Apple's Brief at 9.)

Brief at 9 ("Hughes appears to be currently an Accenture employee in San Jose";

"Warthen appears to have been most recently employed at Datran Media").)  Thus,

Apple does not even know whether these witnesses have relevant trial testimony to

offer—nor has Apple even confirmed where these individuals currently reside.[8]  For

these reasons, Apple has not shown, or even proffered, that their testimony or the

specific prior art is relevant, let alone material, to the asserted claims of the patent-in-

suit.  Apple's vague assertions regarding third-party witnesses do not merit any

consideration in the transfer balancing.  *See DealTime*, 123 F. Supp. 2d at 755 (refusing

to consider the convenience of potential third-party witnesses because the movant

stated the expected testimony in vague terms).

Furthermore, Apple's suggestion that these potential prior art witnesses would

have a central role in this action is misleading and does not establish that these

individuals are likely to be called as witnesses at trial.  Depending on what they actually

know or remember (which no one knows because no one has spoken to them), trial

testimony from these two potential prior art witnesses may not be relevant or probative

to any issue.

The convenience of the five third-party witnesses located in this district, including

an inventor of the '798 Patent, current and former RPI employees knowledgeable about

the incubation and licensing of the technology claimed in the '798 Patent, and

prosecution counsel in Boston, overwhelmingly weighs against Apple's two potential

prior art witnesses in evaluating whether to transfer this case to California.  *See Plastic*

---

[8] The Accenture biography page for Luke Hughes provided in support of Apple's Motion to Transfer (Dkt. No. 38-5) is not available online at the URL indicated in the exhibit.

*Suppliers*, 2011 U.S. Dist. LEXIS 5186, at *12.  Accordingly, this factor weighs against transfer.

### b) Apple Fails to Establish that Party Witnesses Likely to Testify at Trial Would Be Inconvenienced

In weighing the convenience of witnesses, courts should consider not merely the number of witnesses located in a given venue, but the relative salience of their prospective testimony.  *Research Found.*, 2008 U.S. Dist. LEXIS 88618, at *10; *see also*, *DealTime.com*, 123 F. Supp. 2d at 755 ("In evaluating this factor, the court should look beyond the quantity of the witnesses and assess the quality of the testimony to be offered.") (quotation marks omitted).

Apple argues that its party witnesses knowledgeable about the design and development of Siri and the distribution, marketing, and sales of products containing Siri are "[a]lmost all" located in the Northern District of California.  (Dkt. No. 38, Apple's Brief at 8-9.)  But as an initial matter, Apple's (implicit) suggestion that its Siri engineers will play a critical role as testifying witnesses in this patent case is misleading.  Apple has yet to identify any technical non-infringement arguments based on the operation or functionality of the accused technology.  To the extent that Apple develops any technical non-infringement arguments, testimony from Apple engineers would at best provide only minimal probative value, because the parties' technical experts will opine as to whether Apple accused products infringe the '798 Patent.  *See Illumina, Inc. v. Affymetrix, Inc.*, No. 09-CV-277, 2009 U.S. Dist. LEXIS 86339, at *8 (W.D. Wis. Sept. 18, 2009) ("In patent lawsuits, where experts and lawyers end up playing the starring roles, mention of 'witnesses' and 'records' in a given district carries minimal weight.").

Much like Apple's "potential" prior art witnesses, Apple's Siri engineers will have negligible roles as trial witnesses.

The materiality of the testimony from these witnesses is also unclear and potentially cumulative.  In addition to four Siri engineers and one finance manager Apple identified as fact witnesses, Apple vaguely suggests that there are many other "potential" "key witnesses" it "may expect to call."  (Dkt. No. 38, Apple's Brief at 8-9.) But Apple does not identify the names or even the general subject matter for the testimony of these "potential" "key" witnesses it "may" call.[9]  (*Id.*)  For this reason, Apple has not met its burden of establishing that these unnamed witnesses justify transfer.

Finally, Apple's failure to identify the other "potential witnesses" inconvenienced by the current venue tips this factor against transfer.  "To succeed on a transfer motion . . . the moving party must provide the court with a specific list of who will be inconvenienced by the present forum witnesses and general statements of what their testimony will cover."  *Breeden*, 244 F. Supp. 2d at 10 (citing *Factors Etc. Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir. 1978)).  The moving party "must provide precise information, in affidavit form, about the witnesses it intends to call and the anticipated areas of their testimony, so that the court can intelligently weigh the factor of witness convenience."  *Id.*  "The accessibility of anticipated, unnamed witnesses is a factor which courts have generally considered as entitled to little weight if any." *Id.* (citation omitted).  And the convenience of witnesses whose testimony is outlined in only vague terms should not be considered in the § 1404 balancing inquiry.  *DealTime*, 123 F.

---

[9] Apple states that Gunner Evermann recently moved to Boston but will "intermittently" travel to northern California for work.  Given that the distance between Boston and this district is shorter than the distance between Boston and the Northern District of California, this district would be a more convenient forum for Mr. Evermann.

Supp. 2d at 755 ("As [movant] has outlined the expected testimony of [the witnesses] in only vague terms, they will not be considered as material witnesses whose convenience will affect the balancing inquiry.").  Outside of the four Siri engineers and one finance manager, Apple has not identified any other party witnesses, and has not adequately stated the expected testimony of witnesses it does identify.

At this time, Dynamic Advances' party witnesses include Audrey Spangenberg, who can likely testify about the exclusive license agreement between Dynamic Advances and RPI and licensing of the '798 Patent.  Dynamic Advances prefers that this litigation remain in the Northern District of New York, which is most convenient for the third-party witnesses of its sole client, RPI.

Apple has not met its burden of showing that the Northern District of California is clearly more convenient for the witnesses who will likely testify at trial.  Accordingly, this factor weighs against transfer.

### 8.  Apple Has Not Shown that the Availability of Compulsory Process Weighs In Favor of Transfer

Not only does Apple fail to establish that potential witnesses located in the Northern District of California will necessarily testify at trial, Apple fails to address whether deposition testimony could serve as an acceptable substitute to obtain the testimony of unwilling non-party witnesses outside the reach of this Court's trial subpoena power.  Courts in this district have held that the ability to issue subpoenas to trial witnesses was a neutral factor when deposition testimony was an available option. *Sec. Mut. Life Ins. Co. v. Shapiro*, No. 3:09-CV-0316, 2009 U.S. Dist. LEXIS 82934, at *23 (N.D.N.Y. Sept. 11, 2009); *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 561 (S.D.N.Y. 2000) ("[T]he unavailability of process over third-party witnesses does not

compel transfer when the practical alternative of offering videotape or deposition testimony of a given witness exists.").

Pretrial depositions typically occur at mutually convenient locations and times based on the witnesses' preference.  Apple fails to explain why they would need to compel the trial attendance of potential witnesses such as Lucian Hughes and David Warthen—to the extent their testimony is even needed for trial—if deposition testimony is a viable alternative.  Accordingly, this factor is neutral.

### 9.  Location of Documents and Evidence Is Entitled to Little Weight

The factor upon which Apple primarily relies, the location of documents and evidence, is entitled to little weight and is neutral at best to any transfer determination. "Courts have given little weight to this factor in light of the widespread use of electronic document production."  *Research Found.*, 2008 U.S. Dist. LEXIS 88618, at * 19 (citing *Romano v. Banc of Am. Ins. Servs.*, 528 F. Supp. 2d 127, 132 (E.D.N.Y. 2007)).  "In today's era of photocopying, fax machines and Federal Express," the geographic location of documents becomes a factor with only minimal weight.  *Breeden*, 244 F. Supp. 2d at 10 (citation omitted).

Apple contends that "the vast majority of evidence is located in the Northern District of California at Apple's headquarters" and claims that documentary evidence may exist with third parties SRI, Accenture and Ask.com.[10]  (Dkt. No. 38, Apple's Brief at 3-4, 6-7.)  Apple's attempt to argue that it will have a greater burden to produce

_____

[10] Any relevant documents related to the technology behind Siri originally with SRI were likely all transferred to Apple when SRI's spinoff, Siri, Inc., was acquired by Apple in 2010.  (Dkt. No. 38, Apple's Brief at 3-4.)  Apple has not established that the purported prior art patents are relevant to the '798 Patent.  Furthermore, a Google search reveals that Accenture and Ask.com have offices not just in the Northern District of California but all over the world.

evidence in this district compared to California should be disregarded because Apple does not provide an explanation for why production of documents would be more inconvenient in one venue over another.  Apple has not submitted any evidence establishing the difficulty of bringing documents to New York.  Given that most of the relevant documents are likely to be electronically stored, this factor does not weigh in favor of transfer—especially when the parties have already submitted proposed E-Discovery Orders to electronically produce documents.  (Dkt. Nos. 33-2, 33-3).

Apple's reliance on the Fifth Circuit's transfer law, as stated in *In re Volkswagen of Am., Inc.*, 545 F.3d 304 (5th Cir. 2008) and applied in *In re Genentech*, 566 F.3d 1338 (Fed. Cir. 2009), is misplaced.  As set forth above, courts in this Circuit do not give significant weight to the location of documents, as may be required in the Fifth Circuit under *Volkswagen*.[11]

Further, the facts of *Volkswagen* are distinguishable from the facts here. *Volkswagen* involved a car accident where all of the documents and physical evidence critical to car accident cases, as well as the collision site, were all located in the transferee venue.  The suit lacked any connection to the transferor venue: none of the known facts giving rise to the suit occurred in the transferor venue, no source of proof existed in the transferor venue, and no party or non-party witnesses were located in the transferor venue.  Here, in contrast, the sources of proof are located in the transferor and transferee venues, the transferor venue is the situs of numerous operative facts

---

[11] As noted by the Federal Circuit, the Fifth Circuit's law regarding transfer is more favorable to transfer than in other circuits.  *See, e.g.*, *In re Affymetrix, Inc.*, Misc. No. 913, 2010 U.S. App. LEXIS 7968, at *10 n.3 (Fed. Cir. Apr. 13, 2010) (noting that one of the differences between the Fifth and Seventh Circuit's transfer law is that courts in the Seventh Circuit recognize that "technological advancements have diminished traditional concerns related to ease of access to sources of proof and the cost of obtaining attendance of witnesses").

and most of the critical third-party witnesses are located in this venue.  Moreover, documents in a patent infringement case can easily be produced electronically and physical evidence such as iPhones, iPads, and iPods can easily be transported.

Even if the location of documents was significant—and it is not—Apple's argument that information material to this case is concentrated in the Northern District of California ignores the fact that almost all of the documents related to the patent-in-suit are located in New York.  *Excelsior Designs, Inc. v. Sheres*, 291 F. Supp. 2d 181, 187 (E.D.N.Y. 2003) ("[T]ransfer should not merely shift the burden of inconvenience from one party to the other.").  In a patent infringement case, the primary evidence is likely to be documentary, including the contents of the patent-in-suit, file wrapper histories, design drawings, and lab notebooks.  Here, documentary evidence including the prosecution files, file wrapper histories, design drawings, and invention disclosure records related to the '798 Patent are all located at RPI in this district.  (Kudla Decl. ¶ 14.)  Moreover, the exclusive license agreement establishing the relationship between Dynamic Advances and RPI, as well as market analysis documents, licensing documents, litigation files, and other documents related to the technology transfer of the '798 Patent are all located in Troy, New York.  (*Id.*)

Therefore, this factor does not weigh in favor of transfer.

### 10. Apple Has Not Shown Trial Efficiency Favors Transfer

"Although certainly not decisive, docket conditions or calendar congestion of both the transferee and transferor districts is a proper factor and is accorded some weight." *Advanced Fiber*, 2008 U.S. Dist. LEXIS 91795, at *18.  Statistics of filed and pending patent litigations in the two districts from the Public Access to Court Electronic Records

24

(PACER) database are telling.  The total number of currently pending patent lawsuits filed since January 1, 2010, in the Northern District of California outnumbers the pending patent lawsuits in the Northern District of New York filed during the same period by 22 to 1.  (Huang Decl. ¶ 6.)

| PATENT CASES | NORTHERN DISTRICT OF CALIFORNIA | NORTHERN DISTRICT OF NEW YORK |
|---|---|---|
| Filed | 717 | 31 |
| Closed | 435 | 18 |
| Pending | 282 | 13 |
| Number of Judges (district court and magistrate) | 31 (visiting judges: 4) | 15 |

*Between January 1, 2010, through January 31, 2013.

In addition to the public interest in local adjudication and court congestion in the Northern District of California weighing against transfer, Dynamic Advances and Apple have already submitted a civil case management plan and proposed scheduling order. (Dkt. Nos. 33, 33-1).  Further, the parties are engaged in ongoing negotiations over the protective order and will file a proposal to this Court on February 6, 2013.  (Dkt. No. 39) When a scheduling order has been entered and discovery has commenced, the docket condition factor carries negligible weight.  *Advanced Fiber*, 2008 U.S. Dist. LEXIS 91795, at *18-19.

In light of the above, this factor does not weigh in favor of transfer.


IV.   **CONCLUSION**

For the reasons stated above, the Court should deny Apple's Motion to Transfer.

Date:  February 1, 2013                    Respectfully Submitted:


                                           */s/ Paul J. Skiermont*_____

                                           James R. Muldoon (506772)
                                           **HARRIS BEACH PLLC**
                                           333 W. Washington Street
                                           Suite 200
                                           Syracuse, New York 13202
                                           (315) 423-7100 (telephone)
                                           (315) 422-9331 (facsimile)
                                           jmuldoon@harrisbeach.com

                                           Steven P. Nonkes
                                           **HARRIS BEACH PLLC**
                                           99 Garnsey Road
                                           Pittsford, NY 14534
                                           (585) 419-8800 (telephone)
                                           (585) 419-8813 (facsimile)
                                           snonkes@harrisbeach.com

                                           Paul J. Skiermont (107001)
                                           Amy E. LaValle (517854)
                                           Lenny Huang (107012)
                                           Donald E. Tiller (107002)
                                           **SKIERMONT PUCKETT LLP**
                                           2200 Ross Avenue, Suite 4800W
                                           Dallas, Texas 75201
                                           (214) 978-6600 (telephone)
                                           (214) 978-6601 (facsimile)
                                           paul.skiermont@skiermontpuckett.com
                                           amy.lavalle@skiermontpuckett.com
                                           lenny.huang@skiermontpuckett.com
                                           don.tiller@skiermontpuckett.com

                                           ***Attorneys for Plaintiff***
                                           ***Dynamic Advances, LLC***

## CERTIFICATE OF ELECTRONIC SERVICE

On February 1, 2013, a copy of the foregoing PLAINTIFF DYNAMIC ADVANCES, LLC'S OPPOSITION TO DEFENDANT APPLE INC.'S MOTION TO TRANSFER was served on all counsel of record pursuant to the Court's Electronic Notification System.


*/s/ Paul J. Skiermont*
Paul J. Skiermont